UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Pla-Fit Franchise, LLC**

   **v.**                                        Case No. 13-cv-489-PB
                                              Opinion No. 2013 DNH 109
**Patricko, Inc., et. al**


**MEMORANDUM AND ORDER**

Pla-Fit Franchise, LLC ("Pla-Fit") sued two of its franchisees (the "Franchisees") and their operating companies for preliminary injunctive relief, permanent injunctive relief, and damages.  After obtaining agreements from the Franchisees that made a preliminary injunction unnecessary, Pla-Fit moved to compel the parties to arbitrate in accordance with arbitration clauses in their franchise agreements.  The issue presented by defendants' opposition to the motion to compel is whether Pla-Fit waived its right to compel defendants to arbitrate by filing its complaint.

**I.   BACKGROUND**

Pla-Fit is a New Hampshire corporation and the franchisor of Planet Fitness brand gyms.  Defendant Patrick Catino owns a gym in Tewksbury, Massachusetts, that on July 7, 2006 entered

into an agreement with Pla-Fit to become a Planet Fitness franchise.  Catino's gym in Tewksbury is operated by defendant Patricko, Inc.  Defendant Kevin LaVelle and Catino each own a fifty percent share of a gym in Somerville, Massachusetts, that on July 7, 2006 also entered into an agreement with Pla-Fit to become a Planet Fitness franchise.  The Somerville gym is operated by defendant World Gym, Inc.

The franchise agreements contain identical terms, save an addendum that is irrelevant to the claims at issue.  These terms include rules for negotiation and arbitration.  Doc. Nos. 1-1, 1-2.  In paragraph 19.12, the agreements state:

> All controversies, disputes, or claims between the parties . . . arising from or relating to this Agreement that are not resolved by negotiations within thirty (30) days of the notice of dispute, shall on demand of either party be submitted for arbitration to the American Arbitration Association ("AAA").  The arbitration shall be governed exclusively by the United States Arbitration Act . . .  The arbitration proceedings shall be conducted on an individual basis and not on a multi-plaintiff, consolidated, collective or class-wide basis . . . The provisions of this Article 19.12 shall continue in full force and effect subsequent to and notwithstanding expiration or termination of this Agreement.

Within months of entering their respective agreements, the Franchisees began to spar with Pla-Fit on a variety of issues, including the quality and condition of fitness equipment, the

amount the Franchisees would be required to contribute to advertising campaigns, and whether the gyms could continue to offer personal training.  These and other concerns culminated in the Franchisees filing suit on August 30, 2012 in the District of Massachusetts for breach of contract, conversion, and violation of the Massachusetts Consumer Protection Statute.  Pla-Fit responded by moving to compel arbitration based on the arbitration clauses in the franchise agreements.  The court granted Pla-Fit's motion and ordered the parties to arbitrate their disputes.  See World Gym, Inc. v. Pla-Fit Franchise, LLC, No. 12-11620-DJC, 2013 WL 3830164, at *1 (D. Mass. July 19, 2013).  The Franchisees moved for reconsideration on August 19, 2013.  The court ultimately denied the motion for reconsideration on December 11, 2013.  No further filings have been made in the Massachusetts action.

On May 28, 2013, while the Massachusetts action was pending, Pla-Fit sent the Franchisees notices of default for "chronic violations" of Planet Fitness' standards.  Pla-Fit gave them thirty days to cure their violations.  Doc. No. 1-3.  Negotiations continued into the summer, and in late August Pla-Fit again issued notices of default for the same violations.

3

On September 26, 2013, the Franchisees requested an extension until June 2014 to cure their alleged defaults.  On October 24, 2013, Pla-Fit informed the Franchisees that it would grant them the requested extension if they (1) agreed to a time period for compliance; (2) joined the local advertising cooperative; and (3) provided a general release of their previously asserted claims.  Pla-Fit also made an alternative settlement offer, requested a response within ten days, and noted that the Franchisees would be terminated if they refused to resolve all outstanding issues.  Doc. No. 1-7.  On November 4, the Franchisees rejected both proposals.

On November 7, 2013, Pla-Fit sent the Franchisees termination letters citing the uncured material defaults originally specified in its prior notices.  Termination was effective immediately.  The letters required each gym to remove all signs and materials identifying themselves as a Planet Fitness franchise and adhere to other post-termination contract obligations.

On November 11, 2013, Pla-Fit contacted Franchisee's counsel and expressed concern that the two gyms continued to operate as Planet Fitness franchises.  Pla-Fit asked what

4

Franchisees' intentions were with regard to de-branding their facilities.  On November 12, Franchisee's counsel replied to the email by asking "what happen[ed] to my clients' right to arbitrate."  Pla-Fit responded, saying "I take your reply below to my [November 11] question as indicating that your clients do not intend to comply," to which Franchisee's counsel replied, "comply with what."  Doc. No. 22-2.  In response to these emails, Pla-Fit's counsel sent Franchisees an email with the attached complaint and motion for preliminary injunction, described below, stating "I trust this will answer your question."

On November 13, 2013, the Franchisees sent Pla-Fit a letter expressing an interest in arbitrating all disputes and requesting a meeting "prior to formal arbitration."  The letter was incorrectly addressed and Pla-Fit's attorney did not receive it until November 18.

On November 14, 2013, Pla-Fit filed its complaint in this court requesting injunctive relief for trademark infringement, a declaratory judgment that the Franchisees continued to operate competitive businesses in violation of their franchise agreements, and damages for breach of contract.  The next day,

5

Pla-Fit filed a motion for a preliminary injunction.

On November 18, Pla-Fit acknowledged receipt of the November 12 letter.  The parties scheduled a meeting for November 25, with Pla-Fit noting that "[i]f that negotiation does not fully resolve their dispute, [the Franchisees] may as they see fit demand arbitration before the AAA as provided in para. 19.12."  On November 25, 2013, the parties met to discuss a potential resolution.  The Franchisees agreed to de-brand by removing all materials associating their gyms with Planet Fitness, but the parties were unable to reach agreement on other issues.  On December 13, 2013, Pla-Fit sent the Franchisees a proposed order dismissing the entire action and submitting all disputes to arbitration.  Doc. No. 23-4. The parties exchanged emails regarding arbitration, but could not come to an agreement.  Doc. No. 23-5.

On December 19, 2013, the Franchisees answered Pla-Fit's complaint and asserted counterclaims for breach of contract, conversion, wrongful termination, and violation of the New Hampshire Consumer Protection Act.  N.H. Rev. Stat. Ann. Ch. 358-A.  These claims are substantially similar to those that the Franchisees had brought in the District of Massachusetts action.

6

On January 6, 2014, Pla-Fit filed a Motion to Dismiss Defendants' Counterclaims and to Compel Individual Arbitrations. Doc. No. 17.  Pla-Fit also withdrew its request for a preliminary injunction, which it considered unnecessary after the Franchisees agreed to comply with Pla-Fit's de-branding requests.  The next day, the court issued an order denying as moot the motion for preliminary injunction.  The Franchisees then moved for their attorney to appear pro hac vice and I granted their motion on January 23.  That same day, the parties filed a nine page Proposed Discovery Plan.  The next day, the Franchisees objected to the Motion to Dismiss and Compel Arbitration, arguing that Pla-Fit had waived its contractual right to arbitrate by selectively invoking the jurisdiction of this court.

## II.  **STANDARD OF REVIEW**

The First Circuit has yet to address the proper standard of review for a motion to compel arbitration.  See Cogent Comp. Sys., Inc. v. Turbochef Techs., Inc., No. 06-280S, 2008 WL 219343, at *1, 5 (D.R.I. Jan. 24, 2008); Boulet v. Bangor Secs. Inc., 324 F. Supp. 2d 120, 123 (D. Me. 2004).  Pla-Fit has moved

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and some authority suggests that motions to compel arbitration should be examined under the Rule 12(b)(6) standard. See Palcko v. Airborne Express, Inc., 372 F.3d 588, 597 (3d. Cir. 2004). Other courts have applied the summary judgment standard. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 & n.9 (3d Cir. 1980). In my view, the issue cannot be resolved in a categorical fashion. Instead, the required standard will vary depending upon whether the court must look beyond the complaint to resolve the dispute. If the answer is apparent on the face of the complaint, the Rule 12(b)(6) standard will suffice. If the court must consult evidence to resolve the issue, the summary judgment standard must be employed. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-74 (3d. Cir. 2013) (summary judgment standard applies to resolve an arbitrability issue if the motion depends upon facts beyond those pleaded in the complaint).

In the present case, Pla-Fit's motion turns primarily on materials that a court ordinarily may consider in resolving a Rule 12(b)(6) motion such as the Complaint, the franchise

agreements, and matters of public record.  See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014).  The parties, however, have also cited to affidavits and exhibits that cannot be considered in ruling on a motion to dismiss.  Because I intend to rely on these materials, I will resolve the motion using the familiar summary judgment standard.  See, e.g., Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (describing summary judgment standard).

### III. ANALYSIS

The Franchisees argue that Pla-Fit waived its right to demand arbitration by invoking this court's jurisdiction without expressly reserving its right to arbitrate.  I agree that a party can waive its contractual right to arbitrate by implication.  In re Citigroup v. Travelers Prop. Cas. Corp., 376 F.3d 23, 26 (1st Cir. 2004).  Waivers, however, are not to be lightly inferred, and must be considered in light of the "strong federal policy favoring arbitration," dictating that any doubts "should be resolved in favor of arbitration, whether the problem at hand is . . . an allegation of waiver, delay, or a like defense to arbitrability."  Creative Solutions Grp., Inc. v.

Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 (1983)).

Acknowledging this preference for enforcing arbitration agreements, the Franchisees nevertheless cite authority for the proposition that a party waives its right to arbitrate by initiating a lawsuit. Gutor Int'l AG v. Raymond Packer Co., 493 F.2d 938, 945 (1st Cir. 1974); see also Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 316 (1st Cir. 1997). In my view, the Franchisees make too much of these cases. While a decision to sue may signal a disinclination to arbitrate, it does not automatically bar a plaintiff from invoking its arbitration rights. Instead, any arbitration waiver claim must be judged on its own facts and all relevant circumstances must be considered. In Re Tyco Int'l Ltd. Secs. Litig., 422 F.3d 41, 46 (1st Cir. 2005)(arbitration waiver claims must be decided on the particular facts of each case); Creative Solutions, 252 F.3d at 32 (identifying multiple factors in addition to prejudice that may bear on the resolution of an arbitration waiver claim); Nicholas v. KBR, Inc., 565 F.3d 904, 908 (5th Cir. 2009) (holding that the same legal standard for

10

waiver applies to plaintiffs and defendants).

In the present case, Pla-Fit filed suit in part to protect itself from what it saw as the irreparable harm it was facing as a result of defendants' infringements of its trademarks.  A party may seek preliminary injunctive relief in an otherwise arbitrable dispute without forfeiting its right to arbitration.  See Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986).  This is because a ruling precluding a party who wishes to arbitrate from seeking a preliminary injunction would undermine the entire arbitration process by making it less likely that any party facing immediate harm would ever choose to arbitrate its claims.  Id.

Although Pla-Fit could have made its intentions clearer by disclosing its plan to arbitrate in its complaint, the undisputed facts establish that it revealed its proposal to arbitrate almost immediately after it had satisfied its need for interim injunctive relief.  Doc. Nos. 17, 23-4.  Thus, this is not a case where the moving party recognized that its request for injunctive relief was moot but continued to press its damages claim.  See Jones Motor Co., Inc. v. Chauffeurs, Teamsters, & Helpers Local Union No. 633, 671 F.2d 38, 41 (1st

11

Cir. 1982). In short, Pla-Fit did not automatically lose its right to arbitrate its disputes with the Franchisees simply because it filed suit against them.

The Franchisees also contend that I should hold that Pla-Fit waived its right to arbitrate because they were prejudiced by Pla-Fit's Complaint and the ensuing litigation. The First Circuit has identified a number of factors that a court may need to consider in determining whether a party has waived its arbitration rights, but the court has emphasized that a party must show prejudice to succeed on a waiver claim. Creative Solutions, 252 F.3d at 32-33 (citing Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221 (1st Cir. 1995) ("It has been the rule in this Circuit that in order for plaintiffs to prevail on 'their claim of waiver, they must show prejudice.'").

Notwithstanding their claims to the contrary, the Franchisees have not demonstrated that they were prejudiced by Pla-Fit's actions. An inquiry into prejudice involves a contextual examination of factors such as the length of delay, the litigation activities engaged in, and whether a party has been unfairly misled by the process. Restoration Pres. Masonry, Inc. v. Grove Eur., Ltd., 325 F.3d 54, 61 (1st Cir. 2003).

12

In the present case, Pla-Fit informed the Franchisees of its willingness to arbitrate less than three weeks after it had addressed its need for preliminary injunctive relief. It then followed up with a motion to compel arbitration less than two months after it became apparent that the parties were not able to reach an agreement to arbitrate. Taking context into account, the delay at issue here looks even briefer, as neither party had initiated discovery when the motion to compel was filed and the trial remained more than a year away. See Navieros, 120 F.3d at 316 (where motion was filed one day prior to start of trial, after less than two months of expedited litigation, court explained that although the delay was not long in absolute terms, in context it was "both long and prejudicial," as the parties "scrambled to prepare their cases for trial, incurring expenses that would not have been occasioned by preparing for an arbitration.").[1] See also

---

[1] With the exception of Navieros, all the cases relied upon by Franchisees that determined that arbitration rights had been waived involved a significantly longer delay than the period at issue here. See, e.g., Kaneko Ford Design v. Citipark, Inc., 249 Cal. Rptr. 544, 549 (Cal. Ct. App. 1988) (five and a half month delay); Lounge-A-Round v. GCM Mills, Inc., 166 Cal. Rptr. 920, 926 (Cal. Ct. App. 1980) (over nine month delay); D.M. Ward Constr. Co., Inc. v. Elec. Corp. of Kan. City, 803 P.2d 593, 598 (Kan. Ct. App. 1990) (ten month delay, with motion to compel

Citigroup, 376 F.3d at 28-29 (arbitration rights waived when the moving party had, among other things, taken depositions and filed motions for summary judgment).  See also Creative Solutions, 252 F.3d at 33 (arbitration rights not waived when the moving party had initiated no formal discovery save a request for damage calculations).

    The Franchisees nevertheless argue that they were prejudiced because they were forced to incur unnecessary litigation costs as a result of Pla-Fit's delay in demanding arbitration.  In particular, they argue that they were unreasonably forced to (i) retain local counsel; (ii) respond to the Complaint; (iii) de-brand at an accelerated pace; (iv) file a pro hac vice motion; and (v) file a joint proposed discovery plan because of Pla-Fit's failure to invoke its arbitration rights sooner.  I am not convinced.

    The arbitration agreements did not require Pla-Fit to demand arbitration before seeking a preliminary injunction and the Franchisees failed to respond to Pla-Fit's request that they voluntarily de-brand.  Thus, Pla-Fit was entitled to proceed

---

arbitration filed "very close to [within one month of] the trial date").

with its preliminary injunction request and the Franchisees would have needed to retain local counsel, respond to the Complaint, and de-brand in order to address Pla-Fit's preliminary injunction request even if Pla-Fit had immediately invoked its right to arbitrate all other matters in the Complaint.  The Franchisees' pro hac vice motion and the proposed discovery plan also cannot be attributed to Pla-Fit's delay in seeking arbitration because they were filed after Pla-Fit had filed the motion to compel arbitration.[2]

    I am likewise not satisfied that the Franchisees were misled by Pla-Fit. Undisputed evidence in the record demonstrates that the Franchisees either knew, or should have known, that the primary reason Pla-Fit filed its suit was to protect its trademark rights by injunction, and that otherwise it wished to arbitrate all claims.

    The Franchisees make two additional arguments, neither of which is persuasive.  First, they contend that Pla-Fit's suit is an attempt to strong-arm Franchisees that should not be

---

[2] Defendants have submitted a supplemental memorandum detailing the expenses incurred in branding, de-branding, and otherwise responding to Pla-Fit's filing that they allege they "would not have incurred absent the imminent threat of litigation and a preliminary injunction."  Doc. No. 26.  None of these documents affect my analysis.

15

tolerated because it undermines any prospect of non-adversarial resolution.  I reject this argument because the record will not support a claim that Pla-Fit acted in bad faith either in exercising its right to seek injunctive relief or in filing its motion to compel arbitration.

The Franchisees also argue that their claims should not be dismissed due to principles of "judicial and arbitral" economy, arguing that their common ownership of the two franchises should enable them to jointly resolve their claims.  Had the Franchisees wanted to collectively arbitrate their claims, they could have negotiated the right to do so when signing their respective agreements.  In the absence of such negotiation, I must "ensure that private arbitration agreements are enforced according to their terms."  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1750 n.6 (2011); see also Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309 (2013).  This argument thus does not warrant the denial of Pla-Fit's arbitration request.

## IV.  CONCLUSION

For the reasons discussed above, I grant Pla-Fit's Motion to Compel to the extent that it seeks an order compelling the parties to arbitrate their disputes.  Doc. No. 17.  In all other

respects the motion is denied.  The case shall be stayed and the clerk shall administratively close the case, subject to reopening at the request of either party, as appropriate, following arbitration.

    SO ORDERED.


                                        <u>/s/Paul Barbadoro</u>
                                        Paul Barbadoro
                                        United States District Judge

May 20, 2014

cc:   Arthur L. Pressman, Esq.
      Morgan C. Nighan, Esq.
      John Ferris Dow, Esq.
      Daniel K. Sherwood, Esq.